### In re ELECTION OF DIRECTORS OF NEW YORK & WESTCHESTER TOWN-SITE CO.

(Supreme Court, Appellate Division, Second Department. June 29, 1911.)

1. CORPORATIONS (§ 93*)—SUBSCRIPTIONS FOR STOCK—FORFEITURE FOR NON-PAYMENT.

Parties who seek to enforce a forfeiture of corporate stock for nonpayment must pursue all that is necessary to enable them to exercise the power.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 390–402; Dec. Dig. § 93.*]

2. CORPORATIONS (§ 93*)—SUBSCRIPTIONS FOR STOCK—FORFEITURE.

Under Consol. Laws 1909, c. 59, § 54, requiring that forfeiture of corporate stock for nonpayment of subscription must be by action of the

board of directors, such forfeiture, made at what purported to be a meeting of the board of directors by less than a quorum thereof, was ineffective, and could not be enforced on the ground that the members acting thereon, being members of the executive board, acted in that capacity for the board of directors.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 390–402; Dec. Dig. § 93.*]

3. CORPORATIONS (§ 283*)—SUBSCRIPTION TO CORPORATE STOCK—FORFEITURE—PROCEEDINGS.

Under Laws 1909. c. 28 (Consol. Laws 1909. c. 23) § 32, the court, in holding that proceedings for the forfeiture of corporate stock for nonpayment of subscription were invalid, and that the holders of such stock were entitled to vote at an election, might properly set such election aside, and make such order or give such relief as right and justice might require, including the right to order a new election.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 283.*]

Appeals from Special Term, Westchester County.

Petition by Robert E. Robinson and others against Jacob Leitner and others to review an election of directors of a corporation. From an order resettling an order setting aside the election, defendants appeal; and from an order resettling an order denying certain of the relief prayed for in the petition the petitioners appeal. Orders affirmed.

See, also, 130 N. Y. Supp. 419.

Argued before JENKS, P. J., and HIRSCHBERG, THOMAS, BURR, and CARR, JJ.

R. Floyd Clarke (Robert R. Reed, on the brief), for petitioners.
George S. Graham (J. Addison Young, on the brief), for defendants.

BURR, J. This is a special proceeding brought under section 32 of the general corporation law (Laws 1909, c. 28 [Consol. Laws 1909, c. 23]) to review an election for directors of the New York & Westchester Town-Site Company. The defendants appeal from an order made February 9th, which resettled an order of February 2, 1911, which set aside an election held October 17, 1910, and ordered a new election. The petitioners appeal both from the order of February 9th, resettling the order of February 2d, and from the order of February 2d, as resettled in so far as, first, it refuses to declare petitioners to be the lawfully elected board of directors of the company; second, refuses to enjoin the individual defendants from acting as directors or officers thereof, and to compel them to turn over to petitioners the books, seal, and other corporate property under their control; third, fixes the date for determining the qualification of voters at the new election as February 28, 1911; fourth, inserts in the order a provision that at such new election all stock may be voted which was entitled to vote on February 28th; fifth, refuses generally to restrain the defendant directors and the officers from acting; and, sixth, provides that nothing shall be taken to adjudicate the validity of stock held by the Nassau Securities & Holding Company.

It may be doubted whether defendants' appeal brings up anything for review. It is not from the order of February 2d, which fixed and

determined the rights of the parties, but from an order of February 9th, which corrected the form thereof. Petitioners' notice of appeal is in proper form. It is from the order of February 2d as resettled by the later order. But inasmuch as the point was not raised upon the argument of the case, and the power to amend a defective notice of appeal now exists, we have concluded to consider defendants' appeal upon the merits.

The New York & Westchester Town-Site Company was incorporated October 21, 1905, for the purpose of dealing in real estate. On April 15, 1908, its board of directors made a call for payment on account of subscriptions to the capital stock. Such payment was to be made in four installments, on June 15, September 15, December 15, 1908, and March 15, 1909, respectively. Notice of this call was sent by mail to the stockholders on April 23, 1908. Palmer, Ferren, and Pryer, three of the subscribers, failed to respond to the call. On July 8, 1908, three of the members of the board of directors concurred in a resolution directing the counsel of the company to take steps to forfeit the stock of delinquent subscribers and stockholders, and directing the secretary of the company to "sign and serve upon, or mail to, each such stockholder such notice as should be prepared for him by counsel for the company." On July 14th a notice was sent to each stockholder referring to the action of the board on April 15th, and to the mailing of the notice of call for payment of subscriptions on April 23d. This notice also contained a recital that the parties to whom the notice had been sent had made default in the payment due June 15th, and notified them that, unless such installment was paid at the office of the company "within sixty days from the service of this notice," the stock and all previous payments thereon would be forfeited. This notice was subscribed "By Order of the Board of Directors, L. D. Maltbie, Secretary." It does not appear that Palmer, Ferren, or Pryer paid any attention to this notice. On September 14, 1908, at a meeting of the board of directors, a resolution was adopted which recited the fact of the calls, that sundry stockholders had failed to pay the first installment due June 15, 1908, that under direction of the board statutory notice had been sent to each delinquent that, unless said installment was paid on or before 60 days from date, their stock would be forfeited, and that due proof of proper service of such notice had been made upon Harry Ferren owning 6,900 shares, M. J. Kraus, 1,100 shares, Jacob Leitner, 6,375 shares, Owen T. Palmer, 25,000 shares, and Charles Pryer, 2,000 shares. The resolution thereupon provided that the shares of stock standing in the names of the foregoing persons should be and the same were thereby forfeited to the company. Notice of the passage of this resolution was served upon Ferren, Palmer, and Pryer. It does not appear that either of these persons paid any attention to it. In 1910 efforts seem to have been made by the stockholders who had responded to the calls, to put the company on its feet, and at the election for directors in October of that year there was a fierce struggle for the control of the board. At this election 17,580 votes were cast for the individual defendants other than Ralph P. Buell as directors, and also for one

George S. Graham. Graham subsequently resigned, and defendant Buell was elected in his stead. Five hundred and eighty-four undisputed votes were cast for petitioners and three other persons as directors, and an unsuccessful attempt was made to vote upon the 25,000 shares of stock which had stood in the name of Palmer, the 6,900 shares which had stood in the name of Ferren, and the 2,000 shares which had stood in the name of Pryer. These votes were rejected upon the ground that the stock had been forfeited two years before.

The first and most important question is, Was this stock legally forfeited so that the holders thereof lost the right to vote at the election? "Subscriptions to the capital stock of a corporation shall be paid at such times and in such installments as the board of directors may by resolution require. If default shall be made in the payment of any installment as required by such resolution, the board may declare the stock and all previous payments thereon forfeited for the use of the corporation, after the expiration of sixty days from the service on the defaulting stockholder, personally, or by mail directed to him at his last-known post office address, of a written notice requiring him to make payment within sixty days from the service of the notice at a place specified therein, and stating that, in case of failure to do so, his stock and all previous payments thereon will be forfeited for the use of the corporation." Laws 1909, c. 61 (Consol. Laws 1909, c. 59) § 54.

[1] Forfeitures are strictissimi juris, and parties who seek to enforce them must exactly pursue all that is necessary to enable them to exercise this strong power. Clark v. Hart, 6 H. of L. Cases, 633; Morris v. Metalline Land Co., 164 Pa. 326, 30 Atl. 240, 27 L. R. A. 305, 44 Am. St. Rep. 614.

[2] The statute in express terms declares that the actual forfeiture of the stock must be by action of the board of directors. It also declares with equal precision that as a condition precedent thereto a notice of intended forfeiture must be given, and 60 days must elapse after the service of such notice before final action may be taken. While the statute does not specifically state that the board must determine whether such notice shall be given and when, we think that this is the clear intent of the act for the reason that forfeiture is a corporate act involving the exercise of judgment and discretion. It cannot be considered a purely ministerial act in the ordinary conduct of the business of the corporation which the secretary can perform. Karsch v. Pottier & Stimus Mfg., etc., Co., 82 App. Div. 230, 81 N. Y. Supp. 782; Portland Railroad Co. v. Graham, 11 Metc. (Mass.) 1. None of the cases cited by defendant-appellants seems to us to conflict with this view. The North Carolina statute, construed in Elizabeth City Cotton Mills v. Dunstan, 121 N. C. 12, 27 S. E. 1001, 61 Am. St. Rep. 654, authorizes corporations to provide by their by-laws "the mode of selling shares for non-payment of assessments." The by-law of this corporation contained no provision requiring a warning notice to be given if the call notice is not obeyed. London & Brighton Railway Co. v. Fairclough, 40 Eng. Com. Law Rep. 800, and American Pastoral Co. v. Gurney (C. C.) 61 Fed. 41, were each actions

130 N.Y.S.—27

on calls, and not proceedings for forfeiture. In North Hallenbeagle Mining Co. (Knight's Case) Law Rep., 2 Ch. App. 321, a call was made. Knight, a subscriber to the stock, failed to pay. A warning letter was sent to him in due form, and subsequently an entry was made in the books by the secretary, declaring a forfeiture. The company became financially embarrassed, and thereafter the liquidating officer (corresponding to our receiver) sued Knight on his subscription. All that was really decided in that case was that, in the absence of proof one way or the other, the entry in the books by the secretary that the stock had been forfeited was evidence against the corporation of action by the directors declaring a forfeiture.

In the case at bar it is conceded that there was no valid action of the board of directors of the town-site company requiring the giving of the warning notice, for the reason that the three persons present at the meeting on July 8, 1908, did not constitute a quorum of the board. It so happens that these three persons were also members of the executive committee of the board and were a majority thereof. Defendants contend that the action taken may be deemed the action of the executive committee, and in effect the action of the board. It is not necessary to decide whether the action of an executive committee of a board of directors of a corporation in relation to such a matter is equivalent to the action of the board itself, for the reason that it is apparent that the three persons named were not convened nor acting as such executive committee on the said 8th day of July, 1908. The first evidence as to the character of the meeting appears in the minutes thereof. These are entitled "Minutes of a Special Meeting of the Board of Directors of the New York and Westchester Town Site Company." Second. The secretary in subscribing the notice of intended forfeiture expressly states that it was sent by authority of the board. Third. At the meeting on September 14, 1908, which concededly was a meeting of the board of directors, the minutes show, first, that the minutes of the special meeting of the board of directors held July 8, 1908, were approved, and, second, the adoption of a resolution of forfeiture which, among other things, contains a recital that "under direction from the board" statutory notice was sent to each of the delinquent subscribers. Fourth. At some time between July 8, 1908, and October 17, 1910, the minutes of the meeting of the board of directors on July 8th were fraudulently altered so as to make it appear that a fourth director, a Mr. Patton, was present, and, if he had been, there would have been a quorum of the board in session and its action might have been legal. When it was subsequently proved that Patton was not present, and that the minutes had been fraudulently altered in stating such to be the case, thereupon the contention previously made that the meeting on July 8th was a lawful meeting of the board of directors was abandoned, and defendants for the first time asserted that the meeting was not a meeting of the board at all, but a meeting of the executive committee.

So far as the corporation is concerned, we think that it would be estopped from claiming that the meeting of July 8th was a meeting of the executive committee. The notice of intended forfeiture contained

a recital to the contrary. The minutes at that time pretended to show that the meeting was a meeting of the board of directors. Non constat but that the defaulting stockholders knew that no meeting of the board had been held upon the day specified and believing the law to be, as we have held that it is, that action of the board was necessary to direct the sending of the warning notice, paid no attention to such notice because of their knowledge of its invalidity. So far, then, as the proceedings to forfeit the stock are concerned, we think that the court properly held that such proceedings were invalid, that the holders of such stock were entitled to vote at the election held in October, 1910, and properly set such election aside.

[3] It was within the discretion of the court in connection therewith to make such order or give such relief as right and justice might require. Laws 1909, c. 28 (Consol. Laws 1909, c. 23) § 32. Under all the circumstances, we think that the court acted wisely in ordering a new election, rather than in determining that the candidates of the petitioners were properly elected. Inasmuch as the directors who received the greatest number of votes which were cast, and who also received the certificate of election, and the officers elected by them, are for the time being de facto officers of the corporation, we think, also, that the discretion of the court was wisely exercised as to the extent to which it would restrain their powers in issuing new stock or bonds, and in providing that all persons who are stockholders on the day when the election is held shall be permitted to vote thereat.

The order appealed from should be affirmed, without costs to either party as against the other. All concur.