**In re DAY & MEYER, MURRAY & YOUNG, Inc.**

**No. 147.**

Circuit Court of Appeals, Second Circuit.

Jan. 3, 1938.

Burnstine, Geist & Netter, of New York City (George E. Netter, of New York City, of counsel), for appellants Horn and Winthrop.

Charles Segal, of New York City, for appellants Segal and Bresnick.

Snider, Duke & Landis, of New York City (David B. Landis, of New York City, of counsel), for debtor.

Searle, James, Crawford & Tyng, of New York City (Theodore W. Monroe and Sewell T. Tyng, both of New York City, of counsel), for Bondholders Protective Committee.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

Leave to appeal was granted, and the case is properly here. Meyer v. Kenmore Granville Hotel Co., 297 U.S. 160, 56 S.Ct. 405, 80 L.Ed. 557. The appeal is from an order confirming the plan of reorganization and, although the bondholders have not formally intervened, they can be heard. In re Barclay Park Corp., 2 Cir., 90 F.2d 595.

Appellant bondholders own $19,000 out of an issue of outstanding first mortgage 6½ per cent. bonds in the sum of $590,500, on which issue there are arrears in interest amounting to $173,354.98. All the assets, with the exception of current assets and cash, are subject to the first mortgage securing the outstanding bonds. The appraisal for the land and building occupied by the debtor is $559,250. The debtor has, in addition to this principal asset, office furniture and fixtures, transportation equipment, and some current assets amounting to $65,740. Its liabilities are principal and interest on the bond issue amounting

to $744,854; accounts payable, $7,472.29, with total liabilities of all kinds $787,774.98.

The plan of reorganization provides that the first mortgage bonds be reduced to 50 per cent. of their principal amount and the equity thereby created be represented by the issuance of new preferred and new common stocks to be shared by the bondholders with the general creditors, the present preferred stockholders, and the management. The present common stockholders are to be eliminated and the trade creditors and taxes paid in cash. There is to be provided with the approval of the court, a $40,000 new first mortgage to which the present bond issue will be subordinated. A new corporation is to be organized to take over the assets of the debtor, issue the securities according to this plan, and assume all liabilities. Thus the present bondholders will receive for each $1,000 6½ per cent. bond upon which there is now due $1,260 the following: One $500 new 5 per cent. mortgage bond; 10 shares of new preferred stock having a par value of $50 per share, and 20 shares of new common stock having either no par value or $1 per share par value. General creditors, other than trade creditors, are to receive for each $50 of the principal amount of their claims one share of $50 par value preferred stock, plus cash equivalent to 25 cents on the dollar for such part of their respective claims as shall not equal $50; the present preferred stockholders are to receive one share of the common stock for each share of the present preferred stock. The new preferred stock will be noncumulative until the new mortgage loan, which the corporation may make, shall have been paid off and thereafter it will be cumulative. The new preferred stock has the right to elect a minority of the board of directors; the new common stock has the right to elect a majority, and the directors are authorized to issue and deliver as fully paid and nonassessable all or any part of 11,000 shares out of a total issue of 25,000 shares of the new common stock to the officers and managers of the new corporation or to any one or more of them in such amounts and at such times as the board of directors shall elect. There is no requirement for any binding agreement on the part of the management to remain after receipt of this stock bonus. No restrictions upon salary or other compensation which may be paid to the management is made.

There was no justification for reducing the present mortgage to one-half of its principal amount and eliminating the total amount of interest past due. The reasons advanced therefor are unsound. It is said (a) that it would be effective in reducing real estate taxes, but such taxes are fixed upon the assessed valuation of the real property and not on the amount of the mortgage indebtedness; (b) it is said that with the reduction of mortgage debt it would be easier to pay off from the fund a smaller debt at maturity. This, however, should not be done at the expense of the bondholders. Where the value of the mortgaged property is more than the principal amount of the bond indebtedness, there is no justification in reducing the indebtedness to one-half of the principal. The plan extends the maturity of the bonds as reduced to 1952 and provides for their retirement out of earnings at the rate of $11,000 per year. An attempted justification is made by reasoning that the reduction of the principal will also result in reduction of interest requirements and permit the accumulation of income which otherwise would have to be paid as interest on the bonds. But this is depriving the bondholders of their lien on the property, and is not permissible. In re Barclay Park Corp., supra; Security-First Nat. Bank v. Rindge Land Co., 9 Cir., 85 F.2d 557, 107 A.L.R. 1240.

These reasons do not justify requiring the present bondholders to lose their lien to an extent of 50 per cent. and to give up equity in the property, secured by their lien, for the benefit of unsecured creditors. In re Murel Holding Corp., 2 Cir., 75 F.2d 941; Gerdes on Corporation Reorganizations, vol. 2, § 1087.

Indeed, the mortgaged assets which exceed the principal of the mortgage indebtedness belong to the bondholders. Moreover, the debtor for the past year and a half has almost earned sufficient income to meet the interest requirements of the bonds. General creditors should not be permitted to share dollar for dollar in any part of this by holding preferred stock on a par with the bondholders. Such a plan does not preserve priorities. See Northern Pacific Ry. Co. v. Boyd, 228 U.S. 482, 33 S.Ct. 554, 57 L.Ed. 931. The arrears of interest is also secured and entitled to priority over the general creditors and preferred stock-

holders. In their interest claims the bondholders should be protected. They are not protected under the plan, for they are given only common stock. Such common stock is given share for share to the old preferred stockholders who have no equity left in the corporation and furnish no new consideration. Both the old preferred stockholders and the old common stockholders should be subordinated entirely, since the corporation, being insolvent, belongs to the creditors alone.

The total liabilities of the corporation exceed the assets by $84,000. There is therefore no equity for either the preferred or common stock and, without contributing a new consideration, the preferred stockholders should not receive new common stock share for share. This is the same class of preferred stock which goes to the first mortgage bondholders for their substantial interest claim.

Approximately 45 per cent. of the new common stock is reserved to be issued by the board of directors to the management. This is to be done at some future day and at the discretion of the directors. It becomes unnecessary for us to pass upon the fairness of the issuance of such stock, if the bondholders who appeal are protected by securities which are prior in the ·corporate structure. The plan as proposed is unfair and should not have been confirmed.

It is the duty of the court to scrutinize the plans of reorganization proposed for insolvent companies to make certain that the assets belonging to creditors are not by indirection diverted to stockholders. In re New York Rys. Corp., 2 Cir., 82 F.2d 739; In re Barclay Park Corp., supra. Here the bondholders could, if the mortgage had been foreclosed, have· acquired the legal ownership and full control. The plan fails to protect them and takes away upwards of 50 per cent. of their lien, and is therefore an unjust and unfair plan as to appellants.

The fact that a large majority of the bondholders approved the plan is of no avail to sustain it. In re Barclay Park Corp., supra; First Nat. Bank v. Flersheim, 290 U.S. 504, 54 S.Ct. 298, 78 L. Ed. 465, 90 A.L.R. 391. For these reasons the order appealed from is reversed.

Order reversed.